# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ABDIRISAK MOHAMED HIREY, | No. C26-4045-LTS-MAR |
| Petitioner, | |
| vs. | |
| MARKWAYNE MULLIN, et al., | **MEMORANDUM OPINION AND ORDER** |
| Respondents. | |

## I. INTRODUCTION

This case is before me on petitioner Abdirisak Mohamed Hirey's petition (Doc. 1) for habeas corpus under 28 U.C.S. § 2241. Hirey is an alien who was previously subject to an expedited removal order under 8 U.S.C. § 1225(b)(1)(A)(i) but was released on one-year parole when an immigration judge found he had established a reasonable fear of persecution or torture in his home country of Somalia. *See* Doc. 1. The Government has now revoked his parole and re-detained him. In a previous petition, Hirey claimed substantive and procedural due process violations as a result of his detention as well as his parole termination, a violation of the Immigration and Nationality Act (INA) and violations of the Administrative Procedure Act (APA) based on his parole termination and detention. *See Hirey v. Noem*, No. C25-4075, Doc. 1 (N.D. Iowa Dec. 15, 2025). I determined that the court lacked jurisdiction to determine whether Hirey's parole was lawfully terminated and dismissed his case. *Id.* at Doc. 19.

In the instant petition (Doc. 1), Hirey argues his detention violates his due process rights. In an initial review order (Doc. 2), I directed the respondents[1] to respond to the

---

[1] Though the response was filed only on behalf of the federal respondents and not the state employees (Doc. 6 at 2 n.1), this order will apply to all respondents with equal force.

petition, which they have done (Doc. 6).  Hirey has replied (Doc. 16).  Oral argument is

not necessary.  *See* Local Rule 7(c).


## II.  BACKGROUND

The facts and procedural background were described in Hirey's prior case:

> Hirey, a citizen of Somalia, entered the United States on October 31, 2024, and was detained shortly thereafter by Immigration and Customs Enforcement (ICE).  Doc. 1 at 9-10.  As an alien arriving in the United States, Hirey was served with an expedited removal order under 8 U.S.C. § 1225(b)(1)(A)(i).  Hirey raised a fear of persecution and was referred for a credible fear interview.  On December 13, 2024, the asylum office determined that Hirey had not demonstrated a credible fear but on appeal, an immigration judge found that he had established a reasonable fear of persecution or torture in Somalia.  *Id.* at 10; Doc. 1-4 at 2.  On January 28, 2025, ICE issued an Interim Notice Authorizing Parole, authorizing a one-year parole.  *Id.* at 5, 10; Doc. 1-2 at 1.  Hirey was released from detention and filed an application for asylum on June 6, 2025.  *Id.* at 10.
>
> On December 2, 2025, ICE was looking for another individual when it encountered Hirey at his home in Minnesota and detained him.  *Id.* at 2, 10.  He was then transported to the Woodbury County, Iowa, Jail where he is detained while his immigration proceedings are pending.

*Hirey v. Noem*, No. C25-4075, Doc. 19 (N.D. Iowa Jan. 12, 2026).[2]

---

[2] Hirey was released under 8 U.S.C. § 1182(d)(5)(A), which provides:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Respondents argue the petition should be dismissed under the abuse of writ doctrine and that the decision to terminate Hirey's parole is discretionary and beyond review and that neither the INA nor due process prohibits his mandatory detention. Hirey argues this petition differs from his previous petition because he is not challenging the termination of his parole but his due process interest in his prior release from detention. He relies on other cases in which the court has recognized that even if it does not have jurisdiction to review the parole decision, it can consider whether his previous release created a greater due process interest that requires a bond hearing prior to re-detention.

### III.    STANDARD OF REVIEW

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To receive relief, a petitioner must prove by a preponderance of the evidence that his detention is unlawful. *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Gonzalez Arias v. Woodbury County Jail*, 2026 WL 1735035, at *2 (N.D. Iowa 2026).

### IV.    ANALYSIS

The Government justifies Hirey's civil detention without a bond hearing based on the mandatory detention provision of 8 U.S.C. § 1225(b)(2). The Eighth Circuit has found that similarly situated petitioners qualify under that provision. *See Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). As Hirey does not dispute *Avila*'s relevance, I will treat § 1225(b)(2) as being the applicable statute governing his detention.

While § 1225(b)(2) provides no statutory right to a bond hearing, *see Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), *Avila* does not foreclose a petitioner from raising an as-applied due process challenge. *Avila*, 170 F.4th at 1140 & n.8 (Erickson, J., dissenting). That is the challenge Hirey asserts. Prior to addressing his due process challenge, I will address respondents' argument that Hirey's petition should be dismissed based on the abuse of writ doctrine.

### A. *Do Hirey's Successive Petitions Abuse the Writ of Habeas Corpus?*

Respondents argue Hirey's petition should be dismissed under the abuse of writ doctrine based on Rule 9 of the Rules Governing Section 2254 cases. Rule 9 provides: "Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3) and (4)." Respondents also cite § 2244(b)(1) as requiring dismissal of any "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application." Respondents argue under the principles of res judicata, he should not be permitted to relitigate his due process claim.

Hirey argues that the rules governing section 2254 and 2255 cases and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and their emphasis on finality of judgments, do not apply to immigration detention cases. He notes that the legislative history of AEDPA reflects that Congress was concerned with delay and finality affecting the convictions and sentences in criminal cases and that the Eighth Circuit has declined to apply the abuse of writ doctrine when the petition does not offend the policy concerns of AEDPA. Additionally, Hirey notes that his previous case was dismissed without prejudice for lack of jurisdiction and was not an adjudication on the merits. As such, he argues the instant petition does not constitute a second or successive petition that would be barred under res judicata principles. Finally, Hirey argues that equitable principles should override concerns about finality. He notes that this court has granted habeas to other similarly situated individuals based on claims of due process violations. *See Villegas Salazar v. Sheriff of Linn County*, No. C26-98, 2026 WL 1651508, at *3 (N.D. Iowa 2026); *Gonzalez Arias*, 2026 WL 1735035, at *3. Hirey argues a fundamental miscarriage of justice will result if his claim is not heard concerning the legality of his detention.

Hirey's petition does not constitute an abuse of the writ. While Hirey raised a due process claim in his first petition, I did not address it because I concluded I could not

review any aspect of the Secretary's decision to terminate his parole (and his return to detention)[3] based on *Fofana v. Noem*, 163 F.4th 1135 (8th Cir. 2026). As such, I dismissed his case for lack of jurisdiction and denied his motion to amend the judgment. The instant petition is limited solely to a due process challenge to his ongoing detention that was not directly addressed in his previous petition. Based on the equitable principles guiding the writ of habeas corpus, I will consider the merits of his claim.

### B.  *Due Process Challenge*

Hirey argues he has a due process interest in his prior release from immigration detention and notes the court has granted habeas relief post-*Avila* when the petitioner had previously been released from custody by the Government. *See, e.g.*, *Ermekov v. Mullin*, No. C26-41, 2026 WL 1046766, at *3 (N.D. Iowa Apr. 17, 2026) ("[W]hen the Government decides to release an individual on bond or recognizance, it 'creates an implicit promise . . . that their liberty will be revoked only if they fail to live up to the conditions of release.'"). Respondents distinguish my prior decisions by noting there was no "implicit promise" here as petitioner knew from the beginning that his release was temporary and could be "terminated at any time and for any reason." Doc. 9-3.

In *Singh v. Mullin*, No. C26-53, 2026 WL 1078710 (N.D. Iowa Apr. 20, 2026), the petitioner encountered Border Patrol on the day he entered the United States and was issued a Notice to Appear. *Id*. at *1. He was released on his own recognizance and enrolled in an Alternatives to Detention (ATD) program. *Id*. While he allegedly violated his reporting requirements, he was not terminated from the ATD program until he was arrested for allegedly failing to stop at an open weigh station. *Id*. I granted his § 2241 petition and ordered his immediate release, concluding that the Government failed to

---

[3] *See* 8 U.S.C. § 1182(d)(5)(A) ("and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.").

offer any changed circumstance warranting his re-detention. For the Government to re-detain Singh pending removal proceedings, it had to provide him sufficient notice and a hearing before an immigration judge at which the Government would be required to prove by clear and convincing evidence that he posed a flight risk or danger to the community. *Id.* at *4-5.

In *Villegas Salazar*, the petitioner was encountered at the border and detained. Months later in December 2022, he was paroled under 8 U.S.C. § 1182(d)(5)(A), which authorized his release for one year with automatic termination unless extended by ICE. *Villegas Salazar*, 2026 WL 1651508, at *1. His parole was not extended, but he was not re-detained after his parole expired. He was released to ICE custody following an arrest for public urination in April 2026. *Id.* I noted that this case differed from previous cases because Villegas Salazar's parole expired, thus making him subject to re-detention. *Id.* at *4. Nonetheless, I concluded the circumstances put him in a category that required the Government to justify his continued civil detention. *Id.* I concluded Villagas Salazar was entitled to a bond determination hearing in which the Government had to demonstrate, by clear and convincing evidence that Villegas Salazar presented a flight risk or danger to the community. *Id.*

This case is similar. Hirey was enrolled in ATD on March 6, 2025. Despite alleged violations on April 11, 2025, and May 28, 2025, he was not re-detained until December 3, 2025, as part of an ICE fugitive enforcement operation. Doc. 9-1 at 2. Unlike Villegas Salazar, however, Hirey was re-detained at the time his parole ended/was terminated. Thus, respondents argue the Government did not confer any "greater liberty interest" or "implicit promise' than the notice itself provides – a temporary release from custody for "urgent humanitarian reasons," which could be terminated at any time and for any reason.

Hirey argues that my previous decisions were not based on the continued release after parole violations or the expiration of parole, but on the fact that the Government

had made a prior finding that the petitioner was not a danger or flight risk, as demonstrated by the following analysis in a subsequent case:

> [T]he fact that the Government once deemed Gonzalez Arias to be worthy of parole establishes that the Secretary previously evaluated his dangerousness and flight risk and made favorable findings as to those characteristics. *See* 8 C.F.R. § 212.5(b) (2026) (discretionary parole "would generally be justified only on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding"). Thus, in granting parole the Secretary necessarily considered the same factors that an immigration judge would consider at a bond hearing. This puts Gonzalez Arias in a similar position to those who have been granted release after a bond hearing. It also distinguishes him from those aliens for whom the Government has not previously had the chance to consider their status or circumstances "without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018).
>
> I conclude that the fact Gonzalez was previously evaluated and released confers on him a greater liberty interest than is enjoyed by those applicants for admission who never were.

*Gonzalez Arias v. Woodbury County Jail*, No. C26-4041, 2026 WL 1735035, at *3-4 (N.D. Iowa June 16, 2026). In *Gonzalez Arias*, the petitioner was not immediately taken into custody when his parole expired. He was not re-detained until he was released to ICE custody from state custody for his criminal offenses. *Id.* at *3, n.2. I also noted there was no indication that DHS made any prior attempt to detain Gonzalez Arias after his parole expired. *Id.*

Here, the termination of Hirey's parole occurred on December 2 or 3, 2025, when ICE encountered him while in search of another individual and discovered that Hirey was enrolled in the ATD program and Intensive Supervision Appearance Program (ISAP) and had multiple ISAP violations. Doc. 9-4. I agree with respondents that the circumstances of his re-detention differ from other cases involving release or parole because Hirey was never on release outside the originally-imposed time and terms. In *Singh*, the petitioner

7

had been enrolled in the ATD program since 2019 and was not terminated from such program until his arrest by another law enforcement agency. *Singh*, 2026 WL 1078710, at *1. Unlike Hirey, there was no limited timeframe for his parole (at least not on the record), and thus his liberty interest was not cabined in the same way as Hirey's. In *Villegas Salazar*, the petitioner's parole was similarly limited to a one-year time period, but upon its expiration, he remained on release until he came to ICE's attention based on his criminal offense. *Villegas Salazar*, 2026 WL 1651508, at *4. Thus, his liberty interest, which had once been cabined, was renewed upon the decision of DHS not to re-detain him when his parole expired. Similar circumstances were present in *Gonzalez Arias*, 2026 WL 1735035, at *3.

While I agree that Hirey's initial enrollment in the ATD program required favorable findings as to dangerousness and flight risk, *see* 8 C.F.R. § 212.5(b), which conferred on him a greater liberty interest than those who were never evaluated, Hirey's liberty interest never exceeded the one-year term of parole (subject to termination at any time and for any reason) because the Government terminated his parole and re-detained within that time period. For the reasons stated in my prior order, I cannot review any aspect of the parole-termination decision. Because there is nothing outside of that decision that creates a due process right, Hirey's petition must be denied.

## V.     CONCLUSION

For the reasons set forth herein, Abdirisak Mohamed Hirey's petition (Doc. 1) for a writ of habeas corpus is **denied**.

**IT IS SO ORDERED** this 14th day of July, 2026.

_____
Leonard T. Strand
United States District Judge

8